IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br>GEORGE Q. CHEN,<br>    Debtor.<br>_____/<br>DUX CAPITAL MANAGEMENT, a Bahamas corporation, and JERRY C. DAVIS, an individual,<br>    Plaintiffs-Appellants,<br>  v.<br>E. LYNN SCHOENMANN, Trustee in Bankruptcy, and GEORGE Q. CHEN, an individual, named in his individual capacity, *et al.*,<br>    Defendants-Appellees.<br>_____/ | No. C 05-01364 WHA<br>Related to:<br>No. C 03-00539 WHA<br>No. C 03-00540 WHA<br><br>**ORDER AFFIRMING BANKRUPTCY COURT DECISION** |

**INTRODUCTION**

In this bankruptcy appeal, appellant Dux Capital Management ("Dux") seeks to confirm its alleged right to prosecute a minority shareholder claim against various third parties. Whether Dux had standing as a minority shareholder was the subject of a prior order in one of the related cases listed above. *Dux Capital Management Corp. v. Chen*, 2004 WL 2472247 (N.D. Cal. June 30, 2004). In short, Dux hopes to cure its standing defect by compelling the Trustee to execute a ratification under FRCP 17(a). This order finds that the bankruptcy judge correctly interpreted the Court's prior order to deny appellant's request for declaratory relief or

specific performance with regard to such ratification. Accordingly, the decision of the bankruptcy court is **AFFIRMED**.

## STATEMENT

The underlying facts of this long, complicated dispute were more thoroughly discussed in prior orders and will not be repeated in similar detail here. *See Dux Capital Management Corp. v. Chen*, 2004 WL 1936309, at * 1–7 (N.D. Cal. Aug. 31, 2005)(summarizing the lengthy procedural history for the benefit of the court of appeals). This order will, however, highlight a few key facts.

In 1996, George Chen and George Murphy co-founded Long Life Noodle Company ("LLNC"), an Asian-noodle restaurant. In 1999, Rextron International Limited ("Rextron"), a wholly-owned subsidiary of Yageo Holding (Bermuda) Limited, (which was itself the investment subsidiary of Yageo Corporation), invested $1.4 million in LLNC and acquired all of the preferred stock. As the new majority shareholder, Rextron was entitled to fill three of the five seats on the board of directors. The other two board seats were occupied by George Chen and George Murphy, until they retired in February 2001 and March 2001, respectively.

Meanwhile, Dux had been involved in other litigation with George Chen. In settling that lawsuit, Chen transferred 200,000 shares of common stock in LLNC to Dux. The settlement agreement was entered into on April 25, 2001, but did not become effective until it was approved by the superior court on July 25, 2001.[*] On April 26, 2001, Chen provided notice of his intent to transfer 200,000 shares to Dux at $2.00 per share. Shortly thereafter, Dux demanded a special shareholders' meeting to elect directors for the two vacant board seats. On May 3, 2001, however, the Rextron-controlled board voted to file for bankruptcy. (Although the bylaws required unanimous voting, the two vacancies had enabled the other three directors to vote unanimously.) On May 9, 2001, LLNC filed its Chapter 11 bankruptcy petition.

---

[*] The settlement agreement provided in relevant part (¶ 12.18)(emphasis added):
> The Parties to this Agreement agree and understand that an application for good faith settlement will be filed in the Action pursuant to Code of Civil Procedure Section 877.6 and is expected to be heard on May 7, 2001. *A finding by the court that this Agreement is in good faith under Code of Civil Procedure Section 877.6 is a condition of the validity and enforceability of this Agreement.*

The bankruptcy court eventually confirmed a reorganization plan for LLNC that rendered all prepetition shares of stock worthless. The disbursing agent was also authorized by the bankruptcy court to transfer and assign to Dux and Jerry Davis all of LLNC's claims against Rextron (and its affiliates) that had existed as of May 9, 2001, *i.e.*, any claims or causes of action that had existed *before* the filing of bankruptcy. A jury trial was held on these assigned claims; Dux also asserted its own claim as a minority shareholder based on the 200,000 shares it received as a result of its settlement with Chen. Halfway through the trial, the Rextron defendants raised the issue of standing, arguing that Dux had no rights as a minority shareholder because its settlement had not yet been finalized at the time the bankruptcy petition was filed. The Court reserved ruling on this issue and instructed the jury to assume that plaintiffs had the right to sue. The jury returned a verdict in favor of Dux and Davis.

After the trial, additional briefs were submitted on the issue of standing. The Court concluded that Dux did not have standing to assert a direct claim as a minority shareholder because "the settlement agreement by its own terms was not valid nor enforceable on May 9, 2001," when LLNC filed its bankruptcy petition. *Dux Capital Management Corp. v. Chen*, 2004 WL 2472247, at *3 (N.D. Cal. June 30, 2004). The order specifically noted that "George Chen retained all his legal rights as a minority shareholder" at the relevant time, such that "the cause of action accrued to George Chen;" moreover, "[t]here was no assignment of the cause of action." *Ibid.* As to LLNC's claims which were subsequently assigned to Dux and Davis as part of the bankruptcy proceedings, the Court recognized that "[t]he assignment was independent of the Chen-Dux settlement agreement." *Id.* at *6. Accordingly, the jury's damages award was reduced to exclude "any finding of liability or damages based on an injury solely to Dux as a minority shareholder," but otherwise adopted in full. *Id.* at *7. This ruling is currently on appeal to the Ninth Circuit.

After an amended judgment was entered, Dux sought relief under FRCP 60(b). Dux essentially sought to reopen the case and stay the proceedings, while it attempted to cure its standing defect by enforcing its settlement agreement with Chen. By order dated October 4, 2004, the requested relief was denied. This order is also being appealed to the Ninth Circuit.

Nonetheless, Dux proceeded to seek Chen's ratification under FRCP 17(a). George Chen filed his own bankruptcy petition under Chapter 13 on July 25, 2003. On August 8, 2003, it was converted to a Chapter 11 proceeding. On August 28, 2003, the Trustee was appointed.

* * *

The subject of this appeal is an adversary proceeding that commenced in bankruptcy court on November 2, 2004 (Excerpts of the Record [hereinafter "ER"] at 1–11). An amended complaint was filed on November 17, 2004 (ER 12–25). Therein, Dux asserted that it had been deprived of the "mutually intended benefit of its bargain" gained from entering into the settlement agreement with Chen (ER 21). It further argued that Paragraph 12.2 of the agreement expressly provided that the parties were bound to take all actions reasonably necessary to effectuate settlement and sought specific performance of the same (ER 30):

> Each party to this Agreement shall execute all instruments and documents and take all actions as may be reasonably required to effectuate this Agreement. Such instruments and documents include, without limitation, instruments and documents related to Dux perfecting any security interest it may have in the Shares created by this Agreement, to the extent the same is necessary to protect against any claim by any third party to any rights, title or interest in or to the Shares.

Three dispositive motions were filed: (1) Chen moved to dismiss the complaint against himself on the grounds that he had no authority to execute a ratification because a Trustee had already been appointed; (2) the Trustee moved for summary judgment on the grounds that Dux had no rights to the minority shareholder claim according to *this* Court's order on the standing issue; and (3) Dux moved for partial summary judgment on liability for breach of the settlement agreement and requested both declaratory relief and specific performance. Oral argument was heard on February 18, 2005 (ER 378–91).

Bankruptcy Judge Dennis Montali made his oral rulings on March 2, 2005, granting the first two motions and denying the third (ER 393–406). Judge Montali began by noting that there were "no real material facts in dispute" (ER 395). He then focused on the standing issue and reviewed the holdings of this Court's prior order. Specifically, he observed "that [Dux] did not acquire the minority shareholder claims under the settlement agreement, and that the settlement agreement didn't contemplate such a right, and that there's no assignment of the

4

1  minority [shareholder] claims contemplated either at the time the agreement became effective or
2  otherwise" (ER 396).  This reading of the Court's order led Judge Montali "to the legal
3  conclusion that Dux does not own those claims and therefore they must necessarily be property
4  of the estate" because they belonged to Mr. Chen until the Trustee was appointed; now, the
5  Trustee is "the owner of those claims" (*ibid.*).  Accordingly, he granted the Trustee's motion for
6  summary judgment and denied Dux's motion for partial summary judgment.

7  As for the request for specific performance, he found that there was "nothing to order to
8  be performed because . . . there [wa]s no contractual obligation [to transfer the minority
9  shareholder claim] in the first place" (ER 397).  Judge Montali also granted Chen's motion to
10 dismiss because there was "no theory under which he should be — could be held responsible to
11 do what Dux wants Schoenmann [the Trustee] to do" (ER 401).

12 On March 12, 2005, three orders (one for each corresponding motion) and a judgment
13 reflecting these rulings were filed (ER 407–21).  The notice of appeal was promptly filed a few
14 days later (ER 422–23).

**ANALYSIS**

16 The bankruptcy court's findings of fact are reviewed under a clearly erroneous standard,
17 while conclusions of law are reviewed de novo.  *In re Jan Weilert RV, Inc.*, 315 F.3d 1192,
18 1196 (9th Cir. 2003).  The following issues are raised on appeal:  (1) whether the bankruptcy
19 judge correctly construed the Court's prior order to hold that the Trustee of Chen's bankruptcy
20 estate owns the right to recover on the minority shareholder claim; (2) whether Chen or the
21 Trustee are contractually obligated by the terms of the settlement agreement to provide Dux
22 with their desired ratification under FRCP 17(a); and (3) whether Chen can be personally bound
23 to the declaratory relief Dux seeks against the Trustee.

24 As an initial matter, the bankruptcy judge correctly interpreted the holdings of the
25 Court's prior order on standing.  In particular, that order concluded that as of May 9, 2001,
26 George Chen had retained all his legal rights as a minority shareholder, such that the cause of
27 action accrued to him.  The Court agrees that this compels the legal conclusion that, now that

1 Chen has filed his own bankruptcy petition, the Trustee of his estate owns the right to recover
2 on the minority shareholder claim.
3 In this appeal, Dux seeks to compel ratification from Chen and/or the Trustee under
4 FRCP 17(a), which provides in relevant part:

> Every action shall be prosecuted in the name of the real party in interest. . . . No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

9 This rule "is designed to ensure that lawsuits are brought in the name of the party possessing the
10 substantive right at issue." *Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701
11 F.2d 1276, 1282 (9th Cir. 1983). Dux alleges that Chen initially agreed to execute such a
12 ratification, but then later changed his mind (ER 295). Now, both Chen and the Trustee
13 allegedly refuse to do so in the absence of compensation to the bankruptcy estate (*ibid.*).
14 It should be stressed that FRCP 17(a) is, as Judge Montali accurately observed, a "rule
15 of procedure . . . not a substantive rule," meaning it describes the *manner* in which dismissal
16 may be avoided via ratification by, joinder with, or substitution of the real party in interest (ER
17 398). In other words, FRCP 17(a) provides that a reasonable time must be allowed to invite the
18 real party in interest into the case. But, there is no corresponding obligation for the real party in
19 interest to *accept* that invitation. *See U-Haul Int'l, Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1040
20 (9th Cir. 1986)("To the extent that U-Haul is unable to get ratification from, or joinder of, all
21 other System members, it is entitled only to that portion of the recovery that represents damages
22 to U-Haul itself and to those System members that do ratify or join.") Because Dux did not
23 obtain Chen's ratification, the Court reduced the jury's award to exclude the damages for the
24 minority shareholder claim that belonged to Chen. *Ibid.* ("Jartran need not pay damages in *this*
25 case to any System member that has neither ratified U-Haul's action nor been joined to
26 it.")(emphasis in original).
27 The bankruptcy judge thus correctly concluded that FRCP 17(a) does not itself create
28 any entitlement to ratification. As a sidenote, the Court also questions whether Dux even acted

6

1  within "a reasonable time" after the objection, as it did not even attempt to seek ratification
2  from Chen until October 1, 2004, after all the supplemental briefing was submitted, after the
3  order on standing was issued and after an amended judgment was entered.

4        The key issue on appeal is whether the provisions of the settlement agreement otherwise
5  obligate the Trustee to divest Chen's estate of the minority shareholder claim, as Dux insists.
6  Specifically, Dux alleges that Paragraph 12.2 required the parties to "execute all instruments
7  and documents and take all actions as may be reasonably required to effectuate" the settlement
8  agreement. Yet, a careful reading of the disputed provision reveals that Dux was primarily
9  concerned about protecting its interest in the shares themselves. As Judge Montali emphasized,
10 the Court's prior order had distinguished "ownership of the stock" from "ownership of the
11 minority shareholder claims" (ER 402). While the 200,000 shares in LLNC were transferred to
12 Dux on July 25, 2001, the minority shareholder claim accrued to Chen and was never
13 subsequently assigned to anyone. In fact, at the time the settlement agreement was drafted, the
14 parties never even contemplated that any minority shareholder claims existed.

15       Dux further alleges that Chen (and therefore his estate) suffered no injury-in-fact and
16 has no standing himself. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Put
17 simply, Dux argues that it suffered the loss on the 200,000 shares while Chen reaped the full
18 value of his end of the deal. The Trustee counters that until July 25, 2005, any risk of loss was
19 still on Chen, who would have had to retain the worthless shares if the settlement agreement
20 was not approved. This order finds Dux's complaint that it lost the "benefit of the bargain" in
21 its settlement agreement unavailing. In the bankruptcy context, almost every creditor filing a
22 proof of claim has lost the "benefit of the bargain" struck with the debtor.

23       In any event, the Court is not convinced that Dux lost the benefit of the bargain it struck.
24 Perhaps Dux simply negotiated a bad bargain. By making the superior court's approval an
25 explicit condition of the settlement agreement, Dux knowingly accepted the risk that the value
26 of the stock would decrease in the interim, even independent of a bankruptcy filing. After the
27 bankruptcy petition was filed, Dux could have (and perhaps should have) disputed whether the
28 settlement was in good faith. It could have objected to the superior court's approval of the


United States District Court
For the Northern District of California

agreement or sought rescission. Yet, it did not. Judge Montali pointed out during oral argument that, while it happens rarely, "[s]ome shareholders do better in a bankruptcy" (ER 381). The Court need not speculate whether Dux simply chose to take that gamble and now seeks to recover for its loss. It is sufficient to say that the bankruptcy judge correctly rejected Dux's interpretation of Paragraph 12.2 and denied the requested relief.

As for the question of whether Chen could be personally bound by any declaratory relief against the Trustee, it was unnecessary for the bankruptcy judge to reach this issue because no such relief was granted. Insofar as it will eliminate any confusion, however, the Court agrees with Judge Montali that as an asset of the estate, the minority shareholder claim is no longer owned or controlled by Chen. Dux's requested relief, if granted, would only affect the Trustee.

## CONCLUSION

For the reasons stated above, the ruling of the bankruptcy judge is **AFFIRMED**. Judgment will be entered promptly, as the Court fully expects that Dux will file yet another appeal to the Ninth Circuit.

**IT IS SO ORDERED.**

Dated: August 1, 2005



WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE